**PORTAGE COUNTY BAR ASSOCIATION *v*. MITCHELL.**

[Cite as *Portage Cty. Bar Assn. v. Mitchell,* 101 Ohio St.3d 1, 2003-Ohio-6449.]

*Attorneys at law — Misconduct — Six-month suspension with entire suspension stayed on condition that no further Disciplinary Rule violations are committed — Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation — Aiding a nonlawyer in the unauthorized practice of law.*

(No. 2003-1512 — Submitted October 20, 2003 — Decided December 24, 2003.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 03-008.

———————————

**Per Curiam**.

{¶1}  In November 1973, respondent, Donald P. Mitchell Jr. of Stow, Ohio, Attorney Registration No. 0016178, was admitted to the practice of law in Ohio.  In November 1999, respondent hired Ken Onapolis, a convicted felon and nonlawyer, to work for him.  Respondent also agreed to represent Onapolis in an extradition matter.  In December 1999, respondent permitted Onapolis's wife to act as his secretary without compensation.

{¶2}  On December 20, 1999, a client retained respondent to represent him in a zoning matter.  During the client's initial meeting with respondent, Onapolis took notes and participated in the discussion.  At that meeting, the client entered into a legal-services agreement with "Mitchell and Associates."  Respondent signed the agreement.  As directed, the client drafted a retainer check in the amount of $2,500 to Mitchell and Associates.

{¶3}  Respondent practiced law as a sole practitioner, but his legal-services agreement with the client erroneously listed his business as Mitchell and

Associates. At the time the agreement was made, respondent was contemplating starting a new business with that name, but he ultimately never began that business. Respondent did not disclose to his client that Onapolis was a nonlawyer and a convicted felon.

{¶4} On December 21, 1999, respondent sent Onapolis to Windham, Ohio, to retrieve records relating to the client's zoning matter. On that same day, the client called respondent's office to amend the legal-services agreement so that it was in the client's business's name. Onapolis returned the call and advised the client that he would bring a copy of the amended agreement to the client in Windham to sign. The client signed the new contract, and Onapolis signed the contract on behalf of Mitchell and Associates. Respondent did not know about and did not authorize this second agreement.

{¶5} Respondent submitted applications for appeal and a zoning permit on behalf of his client, and in January 2000, he, Onapolis, and the client attended a zoning-commission meeting. During the meeting, Onapolis passed messages to respondent.

{¶6} Following the zoning-commission meeting, respondent and Onapolis went with the client to a building he owned to discuss the matter. In a subsequent telephone conversation, Onapolis advised the client that he could create the drawings necessary for his building permit and that he knew an architect who would sign off on the drawings for $500.

{¶7} Shortly thereafter, respondent fired Onapolis, disconnected his office telephone, and changed his office locks. Another attorney informed the client that Onapolis was a convicted felon, which prompted the client to confront respondent, terminate his employment contract, and demand a refund of the retainer. Until that occurred, the client had been under the impression that Onapolis was an attorney associated with respondent. Respondent and the client eventually negotiated a $1,000 refund, which respondent paid. Although

respondent was unable to obtain the zoning change that the client had requested, the client was able to maintain his existing use of his property.

{¶8} On February 10, 2003, relator, Portage County Bar Association, filed a complaint charging respondent with having violated several Disciplinary Rules. The parties filed a joint stipulation of facts, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court.

{¶9} The panel found the facts as previously set forth and concluded that respondent's conduct violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 3-101(A) (aiding a nonlawyer in the unauthorized practice of law).

{¶10} In mitigation, the panel found that respondent expressed remorse for any problems he caused his client, that he cooperated fully in the disciplinary process, and that he made restitution to the client. The panel further found that during the pertinent period, respondent's wife filed for divorce and he was experiencing financial difficulties. Respondent has now limited his practice to bankruptcy cases and criminal cases to which he is appointed. The parties stipulated that respondent had no prior disciplinary record, had a reputation for honesty and truthfulness in his 29 years of practice, and did not have any dishonest or selfish motive in his representation of the client.

{¶11} The panel recommended that respondent be suspended from the practice of law in Ohio for six months, with the entire term stayed on the condition that respondent commit no further Disciplinary Rule violations. The board adopted the findings, conclusions, and recommendation of the panel. The board further recommended that the costs of the proceeding be taxed to respondent.

{¶12} We adopt the findings and conclusions of the board. In determining the appropriate legal sanction, we find that respondent violated his

duties to the public, DR 1-102(A)(4), and to the legal profession, DR 3-101(A). See, e.g., *Cincinnati Bar Assn. v. Al'Uqdah*, 99 Ohio St.3d 358, 2003-Ohio-3888, 792 N.E.2d 1074, ¶ 16. We have held that " '[w]hen an attorney engages in a course of conduct that violates DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time.' " *Disciplinary Counsel v. Bowman*, 99 Ohio St.3d 244, 2003-Ohio-3374, 791 N.E.2d 408, ¶ 14, quoting *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E. 2d 237.

{¶13} Nevertheless, when the attorney's action is "an isolated incident and not a course of conduct in an otherwise unblemished legal career," a lesser sanction is appropriate. See *Toledo Bar Assn. v. Kramer* (2000), 89 Ohio St.3d 321, 323, 731 N.E.2d 643; *Disciplinary Counsel v. Eisenberg* (1998), 81 Ohio St.3d 295, 296, 690 N.E.2d 1282. Respondent's action here was an isolated act in a lengthy legal career without any prior disciplinary offenses. Further, there was no evidence that respondent's conduct harmed his client. Therefore, we adopt the six-month stayed suspension recommended by the board. See *Dayton Bar Assn. v. Kinney* (2000), 89 Ohio St.3d 77, 78, 728 N.E.2d 1052, in which we imposed a six-month stayed suspension for misconduct that included a violation of DR 1-102(A)(4) because "respondent's action was an isolated incident and the outcome of his representation would not have changed absent the misconduct." See, also, *Columbus Bar Assn. v. Culbreath* (2000), 88 Ohio St.3d 271, 725 N.E.2d 629 (six-month stayed suspension for misconduct that included a violation of DR 3-101[A]).

{¶14} Accordingly, respondent is hereby suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the condition that respondent commit no further Disciplinary Rule violations. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

Kevin T. Poland and David S. Hirt, for relator.

Donald P. Mitchell, pro se.

_____