OFFICE OF DISCIPLINARY COUNSEL *v*. WATSON.

[Cite as *Disciplinary Counsel v. Watson*, 98 Ohio St.3d 181, 2002-Ohio-7088.]

*Attorneys at law — Misconduct — Two-year suspension with one year stayed on condition that no further misconduct be committed — Sanction to be served consecutively to current one-year suspension — Neglect of an entrusted legal matter — Holding solo legal practice out to the public as a professional partnership — Failing to cooperate in disciplinary investigation.*

(No. 2002-1137 — Submitted August 27, 2002 — Decided December 26, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Count, No. 01-75.

————————————

**Per Curiam**.

{¶1} On February 21, 2002, relator, Disciplinary Counsel, charged respondent, Michael Troy Watson of Cleveland, Ohio, Attorney Registration No. 0029023, in an amended complaint with various violations of the Code of Professional Responsibility and Gov.Bar R. V(4)(G). A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made the following findings of fact and conclusions of law relative to the misconduct it determined respondent to have committed.

{¶2} In 1997, respondent agreed to help a client obtain crime victims' reparations after the client had allegedly been assaulted. Respondent applied for this compensation on September 2, 1997. Thereafter, an investigator in the Attorney General's Office had to send respondent two letters and telephone him at least once before respondent finally forwarded to the client the authorization release forms needed to process the claim. Respondent never returned the signed

forms. Later, in November and December 1997, another investigator sent respondent two letters in an attempt to get additional information about his client's case. Both of these letters requested a response by a specific date and warned that failure to respond might result in a recommendation to deny all or part of the claim for compensation. Still, respondent did not answer.

{¶3} In January 1998, the Attorney General's Office filed a recommendation to deny respondent's client claim for crime victims' compensation on the grounds of failure to cooperate with law enforcement authorities and failure to prove economic loss. The recommendation reported that despite repeated investigative inquiries, respondent had never verified his client's medical expenses as required, nor had he explained why his client had not pursued criminal charges against her alleged assailant. Respondent did not object to this recommendation. A commissioner of the Court of Claims, Victim of Crimes Division, later denied the client's claim for failure of proof.

{¶4} Respondent thereafter requested attorney fees for 5.9 hours at $60 per hour, or $354, as payment for the services he provided up until the commissioner's decision. A second commissioner considered the request for fees, determined that 5.9 hours were excessive, and awarded respondent fees for only 2.35 hours at $60 per hour, or $141. This fee request, particularly the representation that respondent had continued to accumulate billable hours up until the commissioner's denial of his client's claim, later caused the panel to discredit respondent's explanation for neglecting the client's case—that his client had reconsidered pursuing her claim for compensation. For this neglect, the panel found respondent in violation of DR 6-101(A)(3) (neglecting an entrusted legal matter).

{¶5} The panel further found, based on stipulations, that respondent had violated DR 2-102(B) (practicing under a name that is misleading as to the identity and number of lawyers practicing under that name) and (C)

2

(misrepresenting oneself as a member of a legal partnership). The parties agreed that at all times relevant to this case, respondent maintained his law practice under the name of "Watson and Watson, Attorneys and Counselors at Law," notwithstanding that his was a solo practice.

{¶6} The remaining misconduct found by the panel occurred during relator's investigation and prosecution of the preceding infractions and of another grievance against respondent that the panel did not consider a disciplinary offense. In conducting the investigation, relator repeatedly sent requests for information about these grievances to respondent, many of which he flatly ignored. If he did respond, it was often only after weeks of delay, or it was in such disjointed way that the response confounded relator's investigation more than it contributed to it. Even after relator filed its complaint, respondent did not comply with three subpoenas for his deposition and the production of documents, repeatedly waiting until the last minute to advise relator that his work schedule prevented his attendance. For these acts, the panel found respondent in violation of Gov.Bar R. V(4)(G) (failing to cooperate in the disciplinary process) and DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice) and (6) (engaging in conduct that adversely reflects on fitness to practice law).

{¶7} Respondent's recalcitrance eventually caused relator to file a motion to compel compliance with propounded interrogatories and requests for production of documents. On review, the panel chair ordered respondent to comply with this discovery by January 11, 2002. On that date, via facsimile transmission, respondent forwarded to relator answers and objections to the interrogatories. His submission, however, did not include any of the documents referred to in the answers, nor did it include any of the documents for which relator had specifically asked. Moreover, the certificate of service for this submission indicated that it had been sent to relator by regular mail on January 10, 2002. Evidence later showed that relator did not receive respondent's answers

and documentation by mail until January 18, 2002, and that they arrived with the January 10, 2002 certificate of service in an envelope postmarked January 16, 2002.

{¶8} The misleading certificate of service turned out to be the result of a clerical oversight by respondent's office staff. Regardless, when relator had not received by January 16, 2002, the discovery respondent had been ordered to supply five days earlier, relator filed a second motion to compel and transmitted by facsimile notice of the motion to respondent. It was at this time that respondent apparently realized that his discovery responses had not been sent as he had initially represented. But notwithstanding this realization, respondent replied to the second motion to compel by claiming that he had produced the discovery as ordered and that *relator* was therefore attempting to perpetrate a "fraud upon the panel."

{¶9} Respondent subsequently acknowledged that his certificate of service was incorrect and was granted leave to amend the certificate to reflect the actual date that his discovery responses were mailed. The panel, however, concluded that respondent had violated DR 1-102(A)(4) (engaging in fraud, deceit, dishonesty, or misrepresentation) and (6) by misrepresenting the events that had occurred during discovery.

{¶10} In recommending a sanction for this misconduct, the panel observed that respondent's violations of DR 6-101(A)(3) and DR 2-102(B) and (C) were comparatively minor infractions. The panel also considered as mitigating that respondent had agreed to rectify the problems related to his violations of DR 2-102(B) and (C) at the hearing and that, according to judges in the jurisdiction where he practices, respondent has been honest, responsible, competent, and professional in dealing with his clients, other counsel, and the courts.

4

**{¶11}** In the panel's view, however, these factors did little to offset the aggravating circumstances evident in the record and, much more important, the flagrant violations of DR 1-102(A)(4), (5), and (6) and Gov.Bar R. V(4)(G). The aggravating circumstances included that respondent is currently serving under a one-year suspension of his license for previous misconduct, *Disciplinary Counsel v. Watson*, 95 Ohio St.3d 364, 2002-Ohio-2222, 768 N.E.2d 617, that his misconduct manifested multiple offenses, that his "evasiveness and obfuscation certainly bordered on dishonesty, if not crossing the line," and that he had refused to acknowledge his wrongdoing. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. Furthermore, the panel described respondent's conduct during the disciplinary process as the perfect example of how not to behave:

**{¶12}** "He was evasive when a straight answer would have benefited him. He claimed to be too busy to provide answers to the Relator's legitimate inquiries, while finding time to demand an investigation of the Relator's counsel before the panel and the Supreme Court and to bring an action in prohibition before the Supreme Court to prohibit the formal hearing before this panel. [See *Watson v. Marshall*, 96 Ohio St.3d 1436, 2002-Ohio-3344, 770 N.E.2d 1047.] He implemented a scorched earth policy toward the Relator when cooperation would have been to his benefit. Instead of admitting that his office made a mistake and hadn't mailed his discovery responses when he certified that it had, he attacked the Relator. He continued to represent himself even after it should have become apparent that he was not objective about his situation."

**{¶13}** The panel recommended that respondent be suspended from the practice of law for two years with one year stayed on the condition that he commit no further disciplinary violations. The panel also recommended that this sanction be served consecutively to the one-year suspension respondent is currently

serving. The board adopted the panel's findings of misconduct and recommendation.

**{¶14}** Upon review of the record, we agree with the board. The duty to cooperate in disciplinary proceedings is rooted in the self-governing nature of the legal profession. It requires each lawyer to ensure that the profession is properly regulated, even when he himself is the subject of the process. *Lake Cty. Bar Assn. v. Vala* (1998), 82 Ohio St.3d 57, 59, 693 N.E.2d 1083. So when an attorney disregards or fails to cooperate in the disciplinary process, not only does he disserve the public and this court's mission to protect it, he also compromises the profession and himself as a member of it.

**{¶15}** Despite this duty, respondent attempted to thwart relator's legitimate inquiries at every turn, and his constant contentiousness far exceeded anything that could be called professional zeal. Accordingly, we concur that respondent violated the cited Disciplinary Rules and Gov.Bar R. V(4)(G), and we adopt the recommended sanction. Respondent is hereby suspended from the practice of law for two years, with one year stayed on the condition that he commit no further misconduct. This sanction is to be served consecutively to the one-year suspension he is currently serving. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Michael Troy Watson, pro se.

_____