AKRON BAR ASSOCIATION *v.* PAULSON.

[Cite as *Akron Bar Assn. v. Paulson,*
112 Ohio St.3d 334, 2006-Ohio-6678.]

(No. 2006–1575—Submitted October 17, 2006—Decided December 26, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Steven Lewis Paulson, last known address in Twinsburg, Ohio, Attorney Registration No. 0030044, was admitted to the practice of law in Ohio in 1985.

{¶ 2} On December 5, 2005, relator, Akron Bar Association, charged respondent with three counts of professional misconduct. On January 4, 2006, relator served respondent with the complaint by certified mail at his business address as on file with the Supreme Court Attorney Registration Section. Respondent did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

### Misconduct

{¶ 3} In the fall of 2003, Ramona Bobo and five of her coworkers, Betty Harris, Nathan McCall, Glenn Early, Eunice Carrington, and Gerald Shamberger, met with respondent to discuss bringing suit against their employer, claiming that a certain supervisor had engaged in racial discrimination and sexual harassment on the job. The six coworkers' decision to consult a lawyer was precipitated by Bobo's receipt, apparently in August 2003, of a "right to sue" letter from the

Equal Employment Opportunity Commission, allowing the pursuit of an employment-discrimination claim against the employer.

{¶ 4} In September or October 2003, respondent advised the employees that he believed they had viable claims that could be brought as a class action. Respondent asked for $1,500 to take the case, and his clients chipped in various amounts to pay him a total of $1,700.

{¶ 5} Respondent later informed his clients that he had forwarded a letter dated December 10, 2003, to the employer, advising the company about the clients' claims of discrimination. Respondent's letter demanded a response by January 5, 2004. Respondent sent copies of this letter to some of his clients, although most if not all of the clients did not know whether respondent had ever actually sent the letter to the employer or how their employer responded, if at all.

{¶ 6} Respondent had 90 days after Bobo's receipt of the right-to-sue letter to file her discrimination suit. Section 1601.28(e)(1), Title 29, C.F.R. Respondent did not promptly file the action, and the filing deadline may have passed even before respondent's December 10, 2003 letter. Respondent never reported back to his clients, who continued to try to communicate with him, leaving telephone messages at his home and office and visiting his office repeatedly.

{¶ 7} In June 2004, respondent's clients complained about respondent's neglect to the Cleveland Bar Association and also filed suit in the Cuyahoga Falls Municipal Court to recover their retainer. Respondent did not appear in response to the civil complaint. As a result of the court's order, some of respondent's clients have since recovered their shares of the paid legal fees; others had received nothing at the time of their depositions.

{¶ 8} In January 2005, the Cleveland Bar Association transferred respondent's case to relator for further investigation. Relator's early attempts to notify respondent of the grievance by certified mail at a Twinsburg residence and an Akron law firm were unsuccessful. A further attempt was made via certified mail to the Cleveland law firm that respondent had listed as his employer with the Supreme Court Attorney Registration Section.

{¶ 9} On May 11, 2005, an investigator personally served respondent with a package containing information about the grievance, but respondent did not respond. Other attempts to communicate with respondent included a certified letter from relator on July 11, 2005, to advise him of a meeting date to discuss the grievance. Someone at the Twinsburg residence signed the certified mail receipt. A different person signed the certified receipt when relator sent notice of its completed investigation, notice of intent to file a formal complaint, and a copy of the complaint.

{¶ 10} The master commissioner and the board found that in failing to pursue his clients' claims, respondent violated DR 6–101(A)(3) (prohibiting neglect of an entrusted legal matter) and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment). Because respondent ignored efforts to investigate his misconduct, the master commissioner and the board also found a violation of Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation of alleged misconduct).

## Recommended Sanction

{¶ 11} In recommending a sanction for respondent's misconduct, the master commissioner and the board weighed the mitigating and aggravating factors of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Neither the master commissioner nor the board found any evidence of mitigating factors.

{¶ 12} Adopting the master commissioner's report, the board noted that respondent's license has been under suspension since December 2, 2005, for failure to file a certificate of registration and pay applicable fees by September 1, 2005, as required by Gov.Bar R. VI. See *In re Atty. Registration Suspension,* 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671. The board found this to be an aggravating factor under BCGD Proc.Reg. 10(B)(1)(a) (prior disciplinary record). Also in aggravation, the board found that respondent had not cooperated in the disciplinary process; had harmed his clients, in one case irreparably, by abandoning their cases; and had made no restitution. See BCGD Proc.Reg. 10(B)(1)(e), (h), and (i).

{¶ 13} Relator proposed that respondent's license to practice law be suspended for one year. The master commissioner agreed that a one-year suspension was appropriate, and the board recommended this sanction.

## Review

{¶ 14} We agree that respondent violated DR 6–101(A)(3) and 7–101(A)(2) and Gov.Bar R. V(4). In determining the appropriate sanction, however, we consider an aggravating factor in addition to those already identified—the fact that respondent was suspended on November 29, 2006, for having failed in 2003 to properly pursue another client's case and having ignored the ensuing disciplinary proceedings. See *Cuyahoga Cty. Bar Assn. v. Paulson,* 111 Ohio St.3d 415, 2006-Ohio-5859, 856 N.E.2d 970 ("*Paulson I* ").

{¶ 15} Except for respondent's previous sanction, this case is similar to *Cleveland Bar Assn. v. Lehotsky,* 105 Ohio St.3d 226, 2005-Ohio-1204, 824 N.E.2d 534. There, we suspended a lawyer's license for one year, as recommended by the bar association, a master commissioner, and the board, because he had

neglected to complete wills for a married couple, failed to repay the fees the couple had paid, failed to cooperate in the disciplinary proceedings, and had not properly updated his attorney registration. Thus, a one-year suspension is appropriate in this case.

{¶ 16} Because of respondent's repeated instances of neglect, we order that this one-year suspension be served after he completes the two-year suspension in *Paulson I*. Accord *Disciplinary Counsel v. Watson*, 98 Ohio St.3d 181, 2002-Ohio-7088, 781 N.E.2d 212 (two-year suspension, with last year stayed on condition, ordered to run consecutively to one-year suspension then being served pursuant to sanction imposed in previous, unrelated case). Moreover, as we did in *Lehotsky*, we further order as a condition of respondent's reinstatement to the practice of law that he make complete restitution to his clients.

{¶ 17} Respondent is therefore suspended from the practice of law in Ohio for one year, with the suspension to commence at the conclusion of the sanction imposed in *Paulson I*. Upon any request for reinstatement filed pursuant to Gov.Bar R. V(10), respondent shall present proof that he has made restitution in the amounts paid by each of his six clients, for a total of $1,700, with interest at the judgment rate. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON and LANZINGER, JJ., concur.

O'CONNOR and O'DONNELL, JJ., concur in part and dissent in part.

---

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 18} While I agree with the majority with respect to its findings regarding respondent's violations of DR 6–101(A)(3) and 7–101(A)(2) and Gov.Bar R. V(4), I do not agree with the sanction imposed.

{¶ 19} As noted in the majority opinion, respondent's license to practice has been under suspension since December 2, 2005; in this case, he failed to cooperate with the disciplinary process, harmed his clients, and failed to pay restitution. I would therefore impose an indefinite suspension.

O'CONNOR, J., concurs in the foregoing opinion.

---

Zavarello & Davis Co., L.P.A., and Rhonda Gail Davis; Law Office of Lee Peterson and Lee Peterson; and Parker, Leiby, Hanna & Rasnick, L.L.C., and Thomas M. Parker, for relator.